Rusing Lopez & Lizardi, P.L.L.C.
16427 N. Scottsdale Rd., #200
Scottsdale, AZ 85254
Telephone: (480) 663-9800
Facsimile: (520)529-4262
Kate E. Frenzinger
State Bar No. 023100
kfrenzinger@rllaz.com

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| Jaroslav Horvath<br><br>                    Plaintiff,<br><br>v.<br><br>Heartland Payment Systems, LLC, fka Heartland Payment Solutions, LLC; David L. Green and Jane Doe Green; Cameron M. Bready and Jane Doe Bready; David E. Mangum and Jane Doe Mangum; Vincent Lombardo and Jane Doe Lombardo; Michael Brodnick and Jane Doe Brodnick; Marcus Dean and Jane Doe Dean; Doe Entities 1-10; John and Jane Doe A-J.<br><br>                    Defendants. | NO. 2:19-cv-04983-GMS<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jaro Horvath for his Verified First Amended Complaint against Defendants, hereby alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Jaroslav Horvath is an individual residing in Maricopa County, Arizona at all times relevant hereto.

2.      Defendant, Heartland Payment Systems, LLC, f/k/a Heartland Payment Solutions, LLC ("Heartland") is a Delaware limited liability company doing business in Maricopa County, Arizona at all times relevant hereto.

3.      Defendant, David L. Green is a member of and Executive Vice President of Heartland. Upon information and belief, Green and Jane Doe Green reside in the state of Georgia.

4. Defendant Cameron M. Bready is a member of, executive vice president of, and chief operation officer of Heartland. Upon information and belief, Bready and Jane Doe Bready reside in the state of Georgia.

5. Defendant David E. Mangum is a member and president of and chief executive officer of Heartland. Upon information and belief, Mangum and Jane Doe Mangum reside in the state of Georgia.

6. Defendant Vincent Lombardo is President of Sales at Heartland. Upon information and belief Lombardo and Jane Doe Lombardo reside in the state of Oklahoma.

7. Defendant Michael Brodnick is Chief Sales officer of Heartland. Upon information and belief Brodnick and Jane Doe Brodnick reside in the state of North Carolina.

8. Defendant Marcus Dean is the Chief Executive Officer of Heartland. Upon information and belief, Dean and Jane Doe Dean reside in the state of Iowa.

9. Upon information and belief, Doe Entities and John and Jane Doe individuals are entities or individuals that reside outside of Arizona, but which are associated with the Defendants and/or took actions giving rise to liability to Horvath in Maricopa County, Arizona.

10. All acts complained of herein which give rise to Horvath's causes of action against Defendants occurred, in whole or in part, in Maricopa County, Arizona.

11. Venue is proper in this Court because the relationship between Horvath and Defendants giving rise to this action occurred, in whole or in part, in Maricopa County, Arizona.

12. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.00.

13. Plaintiff demands a jury trial for all matters that may be tried by jury.

**GENERAL ALLEGATIONS**

14. Heartland is a financial services company that provides POS and payroll solutions for businesses.

15. Plaintiff Jaro Horvath was hired by Heartland in February 2019 as an outside sales representative.

1

16. Horvath's compensation was based on commissions and residuals. Horvath would receive a commission during his employment for completed sales; he was also entitled to residuals for revenue received from customers for the lifespan of the customer relationship.

17. Heartland represented to Horvath that the average lifespan of a customer relationship was fifteen years.

18. At the time he was hired, Horvath was informed by his division manager that he would retain residuals after his employment terminated.

19. Horvath was not informed of any conditions precedent to receive residuals after his separation.

20. Horvath accepted these terms and conditions of employment, accepted the offer of employment in February 2019, signed the Sales Employee Agreement, and began work for Heartland in March 2019.

21. During his employment Heartland, Horvath often worked 40 or more hours per week.

22. Though Heartland expected Horvath to actively market Heartland, Horvath was required to pay for his own expenses associated with marketing the company, including paying for all hard copy marketing materials, among other things.

23. Heartland did not require or request that Horvath keep records of his working time.

24. Heartland did not train Horvath on its HRIS system, and failed to send Horvath paystubs or an accounting of his Arizona Paid Sick Leave, thus he was unable to access this information during his employment.

25. Heartland did not provide Horvath, a remote, outside sales employee, with information regarding his rights under the Arizona Fair Wages and Healthy Families Act.

26. Despite being aware of Arizona's minimum wage statute, for nearly the entirety of his employment, Heartland failed to pay Horvath minimum wage under the Arizona Fair Wages and Healthy Families Act.

27. Upon information and belief, Heartland knowingly and intentionally paid Horvath less than minimum wage.

28. At various points during his employment, Horvath and his division managers discussed residual payments.

29. Horvath was not informed of any conditions precedent to retaining his residuals; rather, he and his division manager discussed increasing his revenue in order to increase the value of his residuals, and then sell the residuals back to Heartland when and if he separated from the Company (a "Portfolio Buyout").

30. Horvath relied upon these representations of his division manager, and these were the terms and conditions of Horvath's employment.

31. In March 2021, Heartland informed Horvath that he was not meeting his monthly margin requirement.

32. Horvath discussed this with his division manager, who assured him that he had plenty of "runway" to increase his monthly margin; in reliance on that assurance, Horvath made extra efforts to increase his margins, including introducing Heartland to a potentially large new client.

33. Notwithstanding the assurances from his division manager and extra effort that Horvath undertook in reliance on these assurances, on May 4, 2021, Heartland terminated Horvath.

34. Upon his separation, Heartland failed to pay Horvath the difference in his paid wages and minimum wage.

35. Upon his separation, Heartland refused to pay Horvath the residuals he had earned during his employment.

36. On August 6, 2021, Heartland and Horvath entered into an agreement to toll the statute of limitations on any and all claims against Heartland through September 6, 2021.

## FIRST CAUSE OF ACTION

**(Breach of Contract – Heartland)**

37. Plaintiff re-alleges and incorporates the allegations above herein.

38. Heartland and Horvath entered the Sale Employee Agreement in February 2019. Pursuant to that agreement, Heartland was obliged to pay to Horvath compensation due and owing to him, including residuals earned on sales that Horvath made on Heartland's behalf.

39. Throughout his employment, Horvath diligently performed services on behalf of Heartland.

40. Throughout his employment, Horvath was informed that he only needed his residuals to "vest" in order to take advantage of a Portfolio Buyout, but was never informed that he was required to vest in order to receive residuals upon separation.

41. Heartland breached the contract by failing to pay to Horvath sums due and owing to him, including residuals.

42. This breach is material and has cause damages to Horvath in excess of $144,000. Horvath is entitled to an award of attorney's fees and costs against Heartland pursuant to the provisions of A.R.S. §§ 12-341 and 341.01.

## SECOND CAUSE OF ACTION

**(Breach of Covenant of Good Faith and Fair Dealing – Heartland)**

43. Plaintiff re-alleges and incorporates the allegations above herein.

44. Heartland and Horvath entered the Sale Employee Agreement in February 2019. Pursuant to that agreement, Heartland was obliged to pay to Horvath residuals for sales that he closed during his employment.

45. During his employment, Horvath was assured that he would be given "runway" to increase his revenue so that his residuals would vest such that Horvath could take advantage of the "Portfolio Buyout."

46. Despite these assurances, in breach of its covenant of good faith and fair dealing, Heartland terminated Horvath just as he was increasing revenue and had introduced Heartland to

a large new client, so that Heartland could claim that Horvath had not vested, would not be obliged to pay residuals to Horvath.

47. In so doing, Heartland has denied Horvath from the benefits of his bargain with Heartland.

48. As a result, Horvath has been harmed in excess of $144,000.

49. Horvath is entitled to an award of attorney's fees and costs against Heartland pursuant to the provisions of A.R.S. §§ 12-341 and 341.01.

## THIRD CAUSE OF ACTION

## (A.R.S. § 23-363 – All Defendants)

50. Plaintiff re-alleges and incorporates the allegations above herein.

51. At all time relevant to the allegations in this Complaint, Plaintiff was an employee as defined by § 23-362, residing and working in the state of Arizona.

52. At all times relevant to the allegations in this Complaint, Defendants were employers as defined by § 23-362.

53. During the course of his employment, Heartland consistently failed to pay minimum wage to Horvath, as required by A.R.S. § 23-363.

54. During this time, Heartland and each of the Defendants were aware of Arizona's minimum wage statute.

55. Notwithstanding this, Heartland and each of the Defendants were aware that Heartland was paying Horvath less than minimum wage.

56. Defendants knowingly and intentionally paid Horvath less than minimum wage.

57. Because Heartland did not maintain any timekeeping records for Horvath's working time, the exact amount of Horvath's unpaid minimum wage is not yet calculated, but upon information and belief it exceeds $26,964.65.

## FOURTH CAUSE OF ACTION

## (A.R.S. § 23-353 – Heartland)

58. Plaintiff re-alleges and incorporates the allegations above herein.

59. Horvath was involuntarily terminated by Heartland.

60. Heartland not only failed to pay Horvath minimum wage during the majority of the pay periods during his employment, but failed to pay Horvath any unpaid sums within seven days of his involuntary termination as required by A.R.S. § 23-353.

61. There was no good faith dispute at that time about the amounts owed to Heartland; Heartland knew that it had not paid Horvath minimum wage during his employment and possesses the payroll records to calculate and pay Horvath the sums owed to him.

62. Horvath in July 2021, Horvath informed Heartland of the failure to pay him minimum wage during his employment, but Heartland has not made any payments to him.

63. Because Heartland did not maintain any timekeeping records for Horvath's working time, the exact amount of Horvath's unpaid minimum wage is not yet calculated, but upon information and belief it exceeds $26,964.65.

64. Because there is no good faith dispute about the minimum amount due and owing to him, Horvath is entitled to trebling of his unpaid wages pursuant to A.R.S. § 23-355.

65. Plaintiff is also entitled to an award of attorney's fees and costs pursuant to the provisions of A.R.S. §§ 12-341 and 341.01.

## FIFTH CAUSE OF ACTION

### (A.R.S. § 23-353 – Heartland)

66. Plaintiff re-alleges and incorporates the allegations above herein.

67. Horvath was involuntarily terminated by Heartland.

68. From the time of his termination, Heartland has failed to pay Horvath residuals due and owing to him from sales he had made during his employment.

69. There was no good faith dispute at that time about the amounts owed to Heartland; Heartland is aware that it has not paid these residuals to Horvath and possesses the sales records to calculate and pay Horvath the sums owed to him.

70. In July 2021, Horvath informed Heartland of the failure to pay him minimum wage during his employment, but Heartland has not made any payments.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment – Heartland)

71. Plaintiff re-alleges and incorporates the allegations above herein.

72. Pursuant to his employment terms and conditions, Horvath is entitled to residual payments on sales he made during his employment.

73. Heartland has failed and refused to pay Horvath residuals due and owing to him from sales he had made during his employment.

74. Pursuant to A.R.S. § 12-1832, Plaintiff seeks a judicial declaration of his rights pursuant to the Sales Employee Agreement and the terms and conditions of his employment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Horvath prays that the Court award him the following relief:

a. Judgement in Plaintiff's favor awarding him unpaid minimum wages;

b. Judgement in Plaintiff's favor awarding him the value of unpaid residuals;

c. Judgment in Plaintiff's favor declaring that he is entitled to residuals;

d. Trebling of unpaid wages and unpaid residuals;

e. Award of attorneys' fees and costs;

f. Statutory or other penalties that may be assessed against Defendants;

g. Any other and further relief as the Court deems just and equitable.

DATED this 6th day of September, 2021.

**RUSING LOPEZ & LIZARDI, P.L.L.C.**

By: *s/ Kate Frenzinger*
*Attorney for Plaintiffs*